UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LUTFALLAH T. SAWABINI,

                              Plaintiff,

v.                                                              3:24-CV-0391
                                                                (GTS/ML)
ROBERT F. KENNEDY, JR.,[1]

                              Defendant.
_____

APPEARANCES:                                    OF COUNSEL:

LUTFALLAH T. SAWABINI
   Plaintiff, *Pro Se*
11 Manatee Avenue
Sidney, NY 13838

HON. JOHN A. SARCONE III                 FORREST T. YOUNG, ESQ.
UNITED STATES ATTORNEY FOR THE           Assistant United States Attorney
NORTHERN DISTRICT OF NEW YORK
   Counsel for Defendant
100 South Clinton Street, Suite 900
Syracuse, NY 13261

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

Currently before the Court, in this request for judicial review of a decision by the

Department of Health and Human Services ("DHHS") filed by Lutfallah T. Sawabini

("Plaintiff") against DHHS Secretary Robert F. Kennedy Jr. ("Defendant" or "Secretary"), is

Defendant's motion to dismiss Plaintiff's Complaint for lack of subject-matter jurisdiction

_____

[1]      On January 20, 2025, Dorothy Fink replaced Defendant Becerra as acting Secretary of
DHHS, until February 13, 2025, when Robert F. Kennedy, Jr., was appointed Secretary of
DHHS.  Pursuant to Fed. R. Civ. P. 25(d), Defendant Kennedy has been substituted as Defendant
in this action.

pursuant to Fed. R. Civ. P. 12(b)(1), insufficient service of process pursuant to Fed. R. Civ. P. 12(b)(5), and failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  (Dkt. No. 89.)  For the reasons set forth below, Defendant's motion is granted, and Plaintiff's Complaint is dismissed without prejudice.

## I.    RELEVANT BACKGROUND

### A.    Plaintiff's Complaint

Plaintiff's Complaint is lengthy and lacking organizational coherency, but appears to request judicial review of the decision of the Secretary of DHHS (through the Medicare appeals system) denying his claim for Medicare coverage related to (a) inpatient hospital rehabilitation services, and (b) two prescription drugs he alleges are necessary for his medical conditions.  (*See generally* Dkt. No. 1.)  He also appears to allege that Defendant denied him proper review of his complaint regarding the quality of care he received at Cobleskill Hospital on April 5, 2022.  (*Id.*) Although Plaintiff additionally appears to attempt to assert claims such as breach of contract,[2] negligence, and intentional or negligent infliction of emotional distress, all of his claims are directly related to how Defendant handled his Medicare claims and thus, regardless of the specific nature of the claims Plaintiff intended to assert, they all arise under the Medicare and Medicaid Act and are subject to the limitations on judicial review imposed by 42 U.S.C. § 405(g) and (h).  (*Id.*)

### B.    Parties' Briefing on Defendant's Motion to Dismiss

#### 1.    Defendant's Memorandum of Law

---

[2]    Specifically, Plaintiff alleges that the Secretary violated sections of the Medicare Administrative Contractor Beneficiary and Provider Communication Manual, which the Court interprets, with special solicitude to the *pro se* Plaintiff, as a breach-of-contract claim.

Generally, in his motion to dismiss, Defendant makes four arguments.  (Dkt. No. 89, Attach. 1.)  First, Defendant argues that the Court lacks subject-matter jurisdiction to assess the merits of Plaintiff's claims because he did not exhaust his administrative remedies before filing suit.  (*Id.* at 8-12.)  Specifically, Defendant argues that the Government's waiver of sovereign immunity for claims related to administrative decisions on Medicare claims is limited to situations that meet the requirements of 42 U.S.C. § 405(g), and Plaintiff has not met those requirements here because he did not obtain a final decision made after a hearing from the agency as to his claims based on denial of coverage, and there is no appeal right related to his claim based on quality-of-care complaints.  (*Id.*)

Second, Defendant argues that, if the Court finds jurisdiction exists, the Complaint nevertheless does not state a claim upon which relief can be granted.  (*Id.* at 12-15.) Specifically, Defendant argues that (a) Plaintiff cannot obtain relief with respect to any request for reopening of the decision of the Quality Improvement Organization or "QIO" (which in this case was former co-Defendant Livanta LLC) because QIO decisions are final and not appealable, (b) to the extent that the Complaint can be liberally construed as requesting mandamus relief, such relief is not available and Plaintiff has nevertheless not shown entitlement to it because he has not exhausted all other avenues of relief and Defendant did not owe him any nondiscretionary duty related to the agency determination, and (c) to the extent that the Complaint can be liberally construed as asserting a claim under the Administrative Procedures Act ("APA"), an agency decision not to institute proceedings is unreviewable.  (*Id.* at 12-14.) Defendant also argues that Plaintiff's Complaint fails to meet the pleading standards of Fed. R. Civ. P. 8 because it is "a rambling stream of consciousness" that "provides no clear explanation

of the nature or cause of the harm alleged" and does not provide clear notice of what Plaintiff is specifically claiming against Defendant.  (*Id.* at 14-15.)

Third, Defendant argues that Plaintiff failed to effect proper service under Fed. R. Civ. P. 4 because (a) he did not have a non-party effect service on the United States Attorney's Office, and (b) he did not serve the Office within the time required and never attempted to show good cause for failing to comply.  (*Id.* at 16-19.)

Fourth, Defendant argues that leave to amend the Complaint should be denied because Plaintiff cannot remedy the substantive jurisdictional defects evident in the Complaint, and thus leave to amend would be futile.  (*Id.* at 19-20.)

### 2.    Plaintiff's Opposition Memorandum of Law

Generally, in opposition to Defendant's motion, much like in his Complaint, Plaintiff provides a host of arguments presented in no coherent order and does not directly respond to the discrete arguments raised by Defendant, instead spending most of the memorandum arguing about why he believes Defendant wrongly decided his Medicare claims.  (Dkt. No. 114.)  The Court will not summarize the various arguments Plaintiff has made in his memorandum, but states that it has liberally construed and carefully considered all of them in deciding Defendant's motion.

### 3.    Defendant's Reply Memorandum of Law

Generally, in reply to Plaintiff's opposition, Defendant makes two arguments.  (Dkt. No. 116.)  First, Defendant argues that Plaintiff is not entitled to judicial review because he has not shown that he exhausted his administrative remedies, and, in fact, the evidence attached to

Plaintiff's Complaint shows that he did not engage in all the steps required in the agency review process before filing this lawsuit. (*Id.* at 3-4.)

Second, Defendant argues that Plaintiff should not be granted leave to amend because the jurisdictional defects in the Complaint cannot be cured, as well as because he is a serial filer with a history of filing unintelligible memoranda. (*Id.* at 4-6.)

## II.    GOVERNING LEGAL STANDARD

Because the Court finds that the pending motion can be decided on the legal standard governing motions to dismiss for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1), without consideration of the legal standard governing motions to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), the Court will recite only the former legal standard in this Decision and Order.

"It is a fundamental precept that federal courts are courts of limited jurisdiction." *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). Generally, a claim may be properly dismissed for lack of subject-matter jurisdiction where a district court lacks constitutional or statutory power to adjudicate it. *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000). A district court may look to evidence outside of the pleadings when resolving a motion to dismiss for lack of subject-matter jurisdiction. *Makarova*, 201 F.3d at 113. The plaintiff bears the burden of proving subject-matter jurisdiction by a preponderance of the evidence. *Makarova*, 201 F.3d at 113 (citing *Malik v. Meissner*, 82 F.3d 560, 562 [2d Cir. 1996]). When a court evaluates a motion to dismiss for lack of subject-matter jurisdiction, all ambiguities must be resolved and inferences drawn in favor of the plaintiff. *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005) (citing *Makarova*, 201 F.3d at 113).

5

**III.    ANALYSIS**

**A.    Whether the Court Has Subject-Matter Jurisdiction Over Plaintiff's Claims**

After careful consideration, the Court answers the above question in the negative for the reasons stated in Defendant's memoranda of law.  *See, supra,* Parts I.B.1 and I.B.3 of this Decision and Order.  To those reasons, the Court adds the following analysis.

"Judicial review of claims arising under the Medicare Act is available only after the Secretary renders a 'final decision' on the claim, in the same manner as is provided in 42 U.S.C. § 405(g) for old age and disability claims arising under Title II of the Social Security Act." *Heckler v. Ringer*, 466 U.S. 602, 605 (1984); *see also* 42 U.S.C. § 405(g) ("Any individual, after any final decision of [the Department of Health and Human Services] made after a hearing to which he was a party, . . . may obtain review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision. . . .").  Claims under the Medicare Act are also subject to 42 U.S.C. § 405(h), which states, in relevant part, that "[t]he findings and decisions of the [Department of Health and Human Services] after a hearing shall be binding upon all individuals who were parties to such hearing," and that "[n]o action against the United States, [the Secretary or the Department of Health and Human Services], or any officer or employee thereof shall be brought under section 1331 or 1346 of title 28 to recover on any claim arising under this subchapter."  42 U.S.C. § 405(h); *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 5 (2000).  As a result, the only way in which a federal court can exercise subject-matter jurisdiction over an appeal of a claim under the Medicare Act is if the plaintiff has satisfied the conditions of Section 405(g), i.e., he or she has obtained a final decision from Department of Health and Human Services after a hearing.

An explicit part of procuring jurisdiction in federal court is therefore that the decision was not only "final," but was also obtained "after a hearing."  "Under *Smith* [*v. Berryhill*, 587 U.S. 471 (2019)], the 'key procedural threshold' in determining whether a dismissal constitutes a final decision made after a hearing within the meaning of section 405(g) is whether an ALJ held a hearing on the merits."  *Five Points Healthcare of NC, LLC v. Becerra*, 669 F. Supp. 3d 524, 529 (E.D.N.C. 2023) (collecting cases).  As a result, "procedural dismissals without an ALJ hearing stemming from unjustified delays on the part of plaintiffs do not constitute a 'final decision . . . made after a hearing' within the meaning of section 405(g)," meaning a federal court would lack subject-matter jurisdiction over those claims.  *Five Points Healthcare*, 669 F. Supp. 3d at 529.  Further, the Supreme Court has also indicated that "[t]o obtain a final decision from the Secretary a claimant is required to exhaust his administrative remedies by proceeding through all . . . stages of the administrative appeals process," and that "[o]nly a claimant who proceeds through all . . . stages receives a final decision from the Secretary."  *Bowen v. City of New York*, 476 U.S. 467, 482 (1986).

Here, Plaintiff has not alleged facts plausibly suggesting that he meets either the "after a hearing" or the "final decision" requirements.  It appears undisputed that Plaintiff was denied a hearing.  Indeed, Plaintiff includes a copy of the decision of the Medicare Appeals Council in which it denied his request for review of the ALJ's dismissal of his claims related to (a) his request for coverage of an inpatient rehabilitation stay under Medicare Part A, and (b) two requests for coverage of certain medications under Medicare Part D.  (Dkt. No. 1, Attach. 2, at 27-31.)  In that decision, the Medicare Appeals Council noted that the ALJ had "dismissed the appellant's request for hearing on the basis that the Qualified Independent Contractor (QIC) did

not issue a reconsideration decision and the right to an ALJ hearing only exists when a QIC reconsideration decision has been submitted for the claims at issue." (*Id.* at 29.) The Medicare Appeals Council noted that the record did not contain any evidence that Plaintiff had obtained either a QIC reconsideration for the Part A claim or an IRE reconsideration for the Part D claims, and in fact did not even show that Plaintiff had received initial determinations or redeterminations related to either of those claims. (*Id.* at 30.) The Medicare Appeals Council concluded that, because obtaining a QIC or IRE reconsideration was a requirement for entitlement to an ALJ hearing, and because "there is no evidence of a determination at every level of the appeals process for either claim, neither the ALJ nor the Appeals Council has the authority to rule on this case," and therefore the ALJ's dismissal of the request for a hearing was proper. (*Id.*)

The Medicare Appeals Council's dismissal determination therefore shows both that (a) any decision Plaintiff received was not only not on the merits of his claims, but did not occur after a hearing, and (b) he did not proceed through all of the stages of the administrative appeals process because, even though he submitted requests for review to the ALJ and Medicare Appeals Council, there is no indication he participated in any of the earlier stages of the relevant administrative proceedings. There is therefore nothing in Plaintiff's Complaint and the papers on the current motion that plausibly suggest Plaintiff has meets the requirements for judicial review under Section 405(g).[3]

---

[3]    In the Complaint, Plaintiff alleges as relevant that he

> Appealed to MAC CONTRACTOR IS LIVINTA & IS QIO
> organization who[] adjudicate hosp. early/premature discharges
> after 60 days livinta with proven Miss diagnosis of plaintiff sided

The Supreme Court's decision in *Smith* does not suggest any different outcome. Although it was held in that case that a denial of review of a Social Security claim by the Appeals Council on the grounds of timeliness (i.e., on a procedural basis rather the merits) still constituted a final decision, that holding was made in the context of the claimant having received merits decisions at the initial, reconsideration, and ALJ stages (with the ALJ stage also including a hearing). *Smith*, 587 U.S. at 476. By contrast, there is no allegation or evidence in this case that Plaintiff ever sought or received a decision related to his coverage claims at any of the earlier stages before requesting a hearing from the ALJ, and the Medicare Appeals Council's decision shows that Plaintiff also was denied a hearing because the ALJ found that Plaintiff had not obtained such lower agency review. *Smith* did not contemplate a situation in which the plaintiff failed to obtain review at all the levels of the agency procedure.

---

and rules against plaintiff[]&[]plaintiff appealed to OMAHA ALJ With 1st Level Appeal. ALJ did rule against plaintiff & plaintiff appealed to the DAB Appeal council I Who RULED FOR LEVEL 5 A JUDICIAL REVIEW WITHOUT allowing Plaintiff to have A SEC[] of US HHS SEC REVIEW.

(Dkt. No. 1, at 5-6, 22.) Although less than clear, these factual allegations appear to plausibly suggest that Plaintiff did not follow the proper procedure outlined in the Medicare regulations related to his Part A and D coverage claims. Plaintiff even seems to acknowledge in multiple places that the reconsideration decision he did have was made by Defendant Livanta, which is a QIO according to both his allegations and evidence attached to the Complaint, and he was told by the ALJ that such decision was unappealable. A reconsideration by a QIO is not one of the steps in an appeal for coverage under either Part A or Part D, and it is clear from the content of Livanta's reconsideration decision that it did not relate to either his Part A or Part D claim, but rather complaints regarding the quality of the care he received at Cobleskill Hospital. As will be discussed later in this Decision and Order, the Medicare Appeals Council correctly concluded that a reconsideration decision by a QIO on quality-of-care claims is final and not appealable. (*Id.* at 6-7.)

Further, to the extent the failure to exhaust administrative remedies has been found by the Supreme Court to be a waivable deficiency, the Court finds there is no basis for waiving the jurisdictional issues in this case. *See Smith*, 587 U.S. at 478 (noting that exhaustion is a waivable requirement that can be waived by either the Agency or the court). The decisions of the ALJ and the Medicare Appeals Council, as well as Defendant's arguments in this litigation, make clear that DHHS did not waive the issue of exhaustion in this case. Nor does the Court find that it should waive that requirement here. Notably, even though Plaintiff has, at the very least, presented his claims to the Secretary in some capacity (the first demonstrable instance being requesting a hearing from the ALJ), there is nothing in the materials before the Court to in any way suggest that the Secretary has ever made any ruling on the merits of Plaintiff's benefits claims; the ALJ denied the request for hearing because there was no reconsideration decision from a QIC, and the Medicare Appeals Council denied Plaintiff's request to review that ALJ decision because it too found no evidence that Plaintiff had obtained a QIC (or IRE) reconsideration decision related to his claims. It would be completely inappropriate for the Court to consider the merits of Plaintiff's claims related to his requests for coverage when the Secretary has not yet done any factfinding on those claims in the relevant agency proceedings. *See Illinois Council on Long Term Care*, 529 U.S. at 13 (noting that "insofar as [Section 405(h)] demands the 'channeling' of virtually all legal attacks through the agency, it assures the agency greater opportunity to apply, interpret, or revise policies, regulations, or statutes without possibly premature interference by different individual courts applying 'ripeness' and 'exhaustion' exceptions case by case"); *Five Points Healthcare*, 669 F. Supp. 3d at 529-30 (noting that, based on Supreme Court holdings, "courts may excuse a failure to exhaust administrative remedies

when (1) the claim is collateral to the claim for benefits; (2) the claimant would be irreparably harmed; and (3) *relief comports with the policies underlying the exhaustion requirement*") (emphasis added) (citing *Mathews v. Eldridge*, 424 U.S. 319, 330-31 [1976]; *City of New York*, 476 U.S. at 482-83).  Indeed, Plaintiff does not appear to meet any of the factors outlined in City of New York: his claims are not collateral, but rather directly regarding his entitlement to certain Medicare benefits; there is no reason to believe Plaintiff could not file another claim for inpatient rehabilitation or medication coverage if he is still in need of those benefits or if his medical situation has changed or worsened; and waiving exhaustion would, as already discussed, potentially place the Court into the position of being factfinder in the first instance.  *See City of New York*, 476 U.S. at 485 ("Because of the agency's expertise in administering its own regulations, the agency ordinarily should be given the opportunity to review application of those regulations to a particular factual context.").  The Court therefore finds no basis for waiving Plaintiff's failure to exhaust his administrative remedies as to his benefits claims.

Plaintiff's allegations also appear to request judicial review of a claim related to the quality of care he received at Cobleskill Hospital.  The Complaint shows that he did indeed pursue that claim with former co-Defendant Livanta through reconsideration.  (Dkt. No. 1, at 8-10.)  In its reconsideration determination, Livanta explicitly notes that "this is the final decision on this matter, and no further appeal rights are available."  (*Id.* at 9.)  This is consistent with 42 C.F.R. § 476.140(b)(1)(iv), which states that, in its "final decision," the QIO is required to include "[a] statement that the letter represents the QIO's final determination and that there is no right to further appeal."  42 C.F.R. § 476.140(b)(1)(iv).  The Medicare Appeals Council found

that it had no authority to consider Plaintiff's quality-of-care complaints because 42 C.F.R. §

476.140(b)(1)(iv) precludes such authority.  (Dkt. No. 1, Attach. 2, at 30-31.)

Section 1320c-3 of Title 42 of the United States Code indicates that a QIO "shall conduct

an appropriate review of all written complaints about the quality of services . . . not meeting

professionally recognized standards of health care, if the complaint is filed with the organization

by an individual entitled to benefits for such services."  42 U.S.C. § 1320c-3(a)(14).  Section

1320c-4 of the same title indicates that beneficiaries are entitled to a reconsideration of a

determination of a QIO if they are dissatisfied with the QIO's determination.  42 U.S.C. § 1320c-

4.  The beneficiary is entitled to a hearing if the reconsideration is adverse to him or her and the

matter in controversy is $200 or more.  *Id.*  However, this right to a hearing is qualified by the

language "to the same extent as beneficiaries under subchapter II are entitled to a hearing by the

Commissioner of Social Security under section 405(b) of this title."  *Id.*  Section 405(b) states

that the Commissioner of Social Security must provide reasonable notice and opportunity for a

hearing related to his or her capacity to issue "decisions as to the rights of any individual

*applying for a payment* under this subchapter.  42 U.S.C. § 405(b)(1) (emphasis added).  Judicial

review of any final decision relating to the reconsideration is permitted where the amount in

controversy is $2,000 or more.  *Id.*

As both the ALJ and Medicare Appeals Council indicate in their dismissal decisions, the

right to request a hearing and seek review from an ALJ and/or the Medicare Appeals Council is

related to claims regarding Medicare benefits coverage and payments for healthcare services, not

quality-of-care complaints.  *Gunn v. Azar*, 20-CV-0162, 2021 WL 3642325, at *3-4 (N.D. Miss.

Aug. 17, 2021) (finding no jurisdiction to consider plaintiff's claim related to an appeal of a QIO

decision on a quality-of-care complaint).  As discussed above, Section 405(b), which controls

when a beneficiary is entitled to a hearing following a reconsideration decision of a QIO (subject

to the Medicare-specific amount-in-controversy), applies to determinations of entitlement to

benefits (i.e., coverage).  42 U.S.C. § 405(b)(1).  There is nothing in the language of this section

that would suggest it also extends the right to a hearing (or any further administrative review) to

complaints related specifically to the quality of care received for services that were covered by

Medicare.  Plaintiff notably does not allege that Medicare denied coverage for the services he

received at the Cobleskill Hospital emergency room on April 5, 2022, but rather that the

physician who treated him on that occasion did not provide competent medical care, including

choosing to discharge him rather than admitting him to the hospital, and that Livanta, a QIC,

erred in denying his quality-of-care claim related to that emergency room visit.  (*See, e.g.*, Dkt.

No. 1, at 15-19, 26, 28-29, 31-33, 33-36; Dkt. No. 1, Attach. 1, at 5-16, 19-22, 26-27, 30-35.)

The Medicare statutes and regulations do not provide this Court with jurisdiction to review

Livanta's decision related to whether the care Plaintiff received at Cobleskill Hospital met

applicable professionally recognized standards of health care, and thus this aspect of Plaintiff's

Complaint must also be dismissed.[4]

    For all the above reasons, the Court finds that it does not have subject-matter jurisdiction

to hear Plaintiff's claims.  His Complaint must be dismissed without prejudice.

    **B.**    **Whether, Before Dismissal, the Court Should Grant Leave to Amend the Complaint**

---

[4]    Moreover, because 42 U.S.C. § 405(g) provides the exclusive avenue for judicial review for claims arising under the Medicare Act, and Plaintiff's quality-of-care complaints are sufficiently arising under that Act to be covered by the scope of that statute, Plaintiff cannot pursue a federal action under the guise of federal-question jurisdiction (28 U.S.C. § 1331).

After careful consideration, the Court answers the above question in the negative for the reasons stated in Defendant's memorandum of law.  *See, supra,* Parts I.B.1 and I.B.3 of this Decision and Order.  To those reasons, the Court adds the following analysis.

Generally, a court should afford a plaintiff, especially a *pro se* plaintiff, an opportunity to amend the complaint at least once if it finds that complaint to be deficient.  *Edward v. Penix*, 388 F. Supp. 3d 135, 144 (N.D.N.Y. 2019) (Hurd, J.) ("Generally speaking, 'a pro se complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.'") (quoting *Nielsen v. Rabin*, 746 F.3d 58, 62 [2d Cir. 2014]).  However, leave to amend may be denied "where it appears that granting leave to amend is unlikely to be productive."  *Baptiste v. Doe*, 680 F. Supp. 3d 186, 192 (N.D.N.Y. 2023) (Sannes, C.J.) (quoting *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 [2d Cir. 1993]).  This includes "where the problem with the claim is 'substantive' and 'better pleading will not cure it.'"  *Jeanty v. Sciortino*, 669 F. Supp. 3d 96, 118 (N.D.N.Y. 2023) (Sannes, C.J.) (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 [2d Cir. 2000]).  Leave to amend has been found to be futile where the court lacks subject-matter jurisdiction to review the plaintiff's claims.  *Logan v. Town of Windsor, New York*, 833 F. App'x 919, 920 (2d Cir. 2021); *Shidagis v. Broome Cnty. Dep't of Soc. Servs.*, 22-CV-1299, 2023 WL 2245047, at *4 (N.D.N.Y. Jan. 17, 2023) (Lovric, M.J.), report-recommendation adopted by 2023 WL 2242092 (N.D.N.Y. Feb. 27, 2023) (Suddaby, J.).

Here, the Court has found that it lacks subject-matter jurisdiction based on Plaintiff's failure to exhaust administrative remedies as to his coverage claims, and the unappealable nature of his quality-of-care claim.  Because these deficiencies are substantive and cannot be remedied

(and, alternatively, because the Court lacks subject-matter jurisdiction over any complaint that could be amended), the Court finds that permitting Plaintiff leave to amend the Complaint would be futile.

**ACCORDINGLY**, it is

**ORDERED** that Defendant's motion to dismiss Plaintiff's Complaint (Dkt. No. 89) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED** **without prejudice** for lack of subject-matter jurisdiction.

Dated: March 25, 2025
         Syracuse, New York

Glenn T. Suddaby
U.S. District Judge